**DUFFY**

v.

**CITY OF PORT WASHINGTON, WIS.**
No. 11026.

United States Court of Appeals
Seventh Circuit.

June 8, 1954.

Warren A. Grady, Port Washington, Wis., C. R. Dineen, Neal J. Gleason, Milwaukee, Wis., for appellant.

James R. Mattison, Milwaukee, Wis., for appellees.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment in favor of the plaintiffs, who are contractors doing business as the Joseph J. Duffy Company, in an action against the City of Port Washington, Wisconsin. The action was filed to recover a balance of $4,255.10 alleged to be due plaintiffs for services performed and materials furnished in the construction of a filter plant for the City pursuant to a written contract.

The contract was prepared by a firm of engineers representing the City and contains 31 Contract Items. The first seven Items were to be paid for on a unit price basis, that is, so much per unit of material or work required, the total cost of each Item depending on the number of units involved as determined after completion of the work. The remaining 24 Items were to be paid for on a lump sum basis, the price for each being determined in advance by the amount of the contractor's lump sum bid on that Item which the City, by its acceptance of the bid and execution of the contract, agreed to pay.

The question here relates to the method of payment provided by the contract for work designated as "Roof Fill" and "Cement Floor Finish." The plaintiffs contend that those subitems of work were meant to be compensated for on a unit price basis, as Class D Concrete, under Contract Item 5; and this action to recover payment was brought on that theory.

It is the City's position that under the contract the cost of that work was included in the plaintiff's lump sum bid on Contract Item 30, and that the City's obligation has been discharged in full by payment of the agreed lump sum amount for Item 30.

Those portions of Contract Item 30 pertinent here are as follows:

"Contract Item 30
Architectural

"Description

"D–30.1  Under Contract Item 30, the Contractor shall furnish, construct, and fully complete the architectural work for the superstructure of the Filter Plant, as shown, specified and directed.

"The following items of work *are included under this Contract Item:*

| | Page | | Page |
|---|---|---|---|
| Masonry and Mortar Materials.... | D-81 | Roofing .......... | D-100 |
| | | *Cement Floor* | |
| Brick Masonry and Tile .............. | D-83 | *Finish* ......... | D-102 |
| | | Linoleum ........ | D-103 |
| Brick Masonry and Tile — Workmanship .............. | D-84 | Ceramic and Quarry Tile.... | D-104 |
| | | Furring and Lathing ........ | D-106 |
| Cut Stone ......... | D-87 | Plastering ........ | D-107 |
| Pre-Cast Stone ... | D-88 | Sheet Metal | |
| Marble ............ | D-89 | Work ........... | D-109 |
| Carpentry ......... | D-92 | Ornamental and | |
| Wood Overhead Doors ............ | D-92 | Light Iron...... | D-110 |
| Hollow Metal | | Lockers and | |
| Doors ......... | D-93 | Bench .......... | D-111 |
| Steel Windows.... | D-95 | Lightning Protective System..... | D-111 |
| Glass and Glazing | D-97 | Hardware ........ | D-112 |
| Caulking ......... | D-98 | Plumbing ........ | D-115 |
| Waterproofing | | Heating ......... | D-119 |
| Course .......... | D-98 | Freight Elevator | D-127 |
| *Roof Fill* .......... | D-99 | | D-135 |

"The following *related* items of work *are not included under this Contract Item:* concrete, steel reinforcement, structural steel, crane rails, gratings, supports, rubbed finish, miscellaneous steel and wrought iron, and miscellaneous iron castings. [Our emphasis.] * * * "

It will be noted that opposite each subitem named as being included in Contract Item 30 there is shown the number of the page of the Contract where the exact specifications for that item are given. So, turning to page D–99 of the Contract we find the following detailed specifications for Roof Fill:

#### "Roof Fill

#### "Light Weight Concrete

"D–30.37 The light weight concrete roof fill shall be composed of one part of Portland cement, three parts of sand, and six parts of an approved light weight aggregate by volume. The thickness of the fill shall be varied to meet the finished elevation lines as shown, so that all roofing will pitch toward drains, allowing no low spots that will hold water.

"Concrete surfaces shall be thoroughly cleaned and then brushed with a cement grout just prior to placing fill. The fill shall be accurately placed and graded, firmly tamped to produce a solid dense concrete, and then screed coated with a ½-inch thick mortar coat, consisting of one part of Portland cement and 3 parts of sand. The screed coat shall be accurately floated to a smooth, even surface without ridges or indentations.

"At the intersection of the roof fill and the parapet walls, a ½-inch preformed mastic expansion joint shall be provided.

#### "Nailing Concrete

"D–30.38 The roof cants and slabs, where shown, shall be covered with nailing concrete similar and equal to that manufactured by the Nailcrete Corp., 'Nailbond' composition manufactured by the National Naylegrip Co., or 'Porete Nailfill' as manufactured by the Porete Mfg. Co. The nailing concrete shall be mixed, applied, and worked in accordance with the manufacturer's recommendations and instructions."

For the exact detailed specifications for Cement Floor Finish required by Item 30 we are referred to page D–102 where this subitem is described as follows:

#### "Cement Floor Finish

#### "General

"D–30.44 A *non-integral* cement floor finish shall be furnished and placed on certain floors as shown and specified. Cement finish on level floors shall be 2 inches thick. All floors shall pitch to drains when shown or specified. Mineral coloring matter of an approved type shall be added top ½-inch.

"Floors to receive linoleum shall be brought to the proper level by placing a cement finish. Coloring and hardening treatment shall be omitted where linoleum is to be laid. [Our emphasis.]

#### "Mixing and Placing

"D–30.45 Cement floor finishes shall be a mixture of one part cement to two parts of sand, to which shall be added the minimum quantity of water which will produce a stiff trowelable mixture. Cement and sand shall be measured by volume, mixed dry; the water shall then be added and each batch shall be mixed

thoroughly to obtain uniform color and consistency. Mortar which has obtained initial set shall not be used.

"Leveling strips shall be set at frequent intervals, using a long straight edge. Floors shall be floated with a wood float and then troweled. After the floors have attained initial set, they shall be steel troweled until all trowel marks and irregularities are removed and the surfaces are smooth, even, and at the required levels.

"Twenty-four hours after the finish has been applied, it shall be covered with a Sisalkraft reinforced paper or approved equal. The paper covering shall be kept in place for at least seven days. Further protection shall be provided by placing planking wherever required. The floor protection shall not be removed until just prior to the final cleaning. * * *"

Contract Item 5, in pertinent part, is as follows:

"Contract Item 5
Concrete
5A—Class B Concrete
5B—Class C Concrete
5C—Class D Concrete

"Description

"D–5.1 Under Contract Items 5A, 5B and 5C, the Contractor shall do all concrete work necessary for the complete construction of the work covered by this contract as specified, shown, and directed; * * *.

"All materials for concrete shall be furnished under these respective Contract Items. * * *"

That portion of the contract headed "Workmanship and Materials" gives the following general specifications for concrete:

"Section 4—Concrete

"General

"W–4.1 Concrete shall be divided into various grades, classified according to compressive strength, to be used in the respective places shown on the Plans, called for in the specifications, or ordered by the Engineers. The Classes of mixtures are referred to as Class A, Class B, Class C, and Class D.

* * * * * *

"Class D concrete is intended principally for low strength concrete, plain or reinforced, used for filing and other similar purposes.

* * * * * *

"Concrete Surfaces

"W–4.22 Exposed interior and exterior concrete surfaces shall be finished to achieve neat and smooth architectural effects.

* * * * * *

" * * * Interior floor finishes shown to be of cement shall receive an *integral* cement finish, *applied before initial set has taken place.* The finish shall consist of a ½ inch layer of stiff and thoroughly mixed mortar consisting of one part Portland cement and two parts of sand. The mortar shall be screeded and floated to a true and uniform surface and then steel troweled to a smooth even finish. [Our emphasis.] * * *"

We are convinced from a study of the above quoted provisions that the parties included Roof Fill and Cement Floor Finish as subitems of work which the plaintiffs were to perform and for which they were paid as part of Contract Item 30. It is the plaintiff's theory, however, that those two items are Class D "Concrete," as described in "Section 4 Concrete" on page W–12 of the Contract and should be paid for at the unit price pursuant to Contract Item 5, page D–8 of the Contract; and that the exclusion clause, the quoted language immediately following the listing ("The following related items of work are not included under this Contract Item: concrete * * *."), therefore excludes from Contract Item 30 those particular items of work. The District Court, in substantial agreement with this reasoning, thought that a reading of Contract Item 30 created "a sense of doubt and uncertainty as to whether 'Roof Fill' and 'Cement Floor Finish' are to be placed in the lump-sum category as items *to be included* or in the list of items specifically *to be excluded.* It is a doubt and uncertainty arising not from vagueness and lack of definiteness, but

rather from the clash of two clearly composed but conflicting and unreconcilable statements * * *." The Court concluded "that plaintiff bidders were justified in not figuring the concrete work for 'Roof Fill' and 'Cement Floor Finish' in the lump-sum bid on Item 30 but rather submitting it as an item to be paid under Item 5C on a unit price basis." We think the trial court erred in this conclusion.

We have noted that opposite each item of work in the list of those to be performed under Item 30 is a page reference. Those references are to the specifications. We have quoted from the references beginning on page D–99 and D–102, the specifications for Roof Fill and Cement Floor Finish, respectively. The specifications for those particular items of work, as for the others listed under Item 30, are lengthy and detailed. It is not open to doubt that they describe with preciseness the manner in which each item of work is to be performed and that they are meant to be followed explicitly. The items of work are listed, reference is made to the specifications, and those are comprehensive in scope and content—all of this within the framework of Contract Item 30. In the face of this context we do not think it can properly be held that two of the listed items of work may be extracted from Item 30 and performed under some other general contractual provision.

A comparison of the detailed descriptions and the specifications for Roof Fill and Cement Floor Finish as referred to in Contract Item 30 with the general provision concerning interior floor finishes of cement as described under Section 4 Concrete, page W–23 of the Contract, discloses material differences in the specifications. For instance, the cement floor finish which was called for under Item 30 was to be nonintegral, 2 inches thick with coloring matter added to the top ½ inch. On the other hand, the general specifications under Section 4 for interior floor finishes called for an integral cement finish to consist of ½ inch of mortar to be applied before the initial set had taken place.

The particular language in the exclusion clause of Contract Item 30 is also significant. The quoted language immediately following the list of items of work to be performed is to the effect that certain *"related"* items of work are not included, and among those named is concrete. It is this general provision which was thought by the Court below and by the plaintiffs here to produce an ambiguity in the Contract. However, the particular language of that clause shows clearly that such is not the case. It states quite precisely that certain *related* items of work are not included in Contract Item 30, and this seems highly important. For if it is only *related* items which are excluded, then it is not possible to construe the clause to mean that any of the particular items previously listed are excluded. That is so, assuming for the moment that some of the items previously listed could otherwise be termed "concrete"; for, even if that were true, the clause would still provide that only *related* concrete items, and not those previously listed, be excluded. There is not, then, a "clash of two clearly composed but conflicting and unreconcilable statements." On the contrary the two provisions, one specifying inclusions and the other exclusions, are consistent.

The plaintiffs contend that in arriving at the estimate for their lump sum bid on Contract Item 30 they considered that Roof Fill and Cement Floor Finish were excluded and that they did not add any amount to their bid to cover these two subitems. They, therefore, say that payment to them of the lump sum price for Item 30 did not pay them for these items. There was testimony tending to support their contention that they had not included the cost of these items as a part of their bid price on Item 30. It does not follow, however, that they have not been paid for them. In Article 40, page A–30 of the Contract, entitled "Contractor's Warranties," the parties said: "In consideration of, and to induce the award of this Contract to him, the Contractor represents and warrants: * * * (5) That he is fully informed regarding all the conditions affecting the work to be

done and labor and materials to be furnished for the completion of this Contract and that his information was secured by personal investigation and research." And in Article 36 on page A–28 of the Contract the parties agreed that: "For the Contractor's complete performance of the work, the City will pay, and the Contractor agrees to accept, subject to the terms and conditions hereof, the lump sum price or unit prices at which this Contract was awarded * * *."

Since the amount of the lump sum bid on Item 30 has been paid to and accepted by the plaintiffs, it follows that they have been paid for all of the subitems, including Roof Fill and Cement Floor Finish, because those items were expressly included in Item 30. There was no justification in the contract for a different interpretation by the plaintiffs.

The written contract here involved is necessarily a lengthy and complex document, drawn with obvious attention to detail and particularity, and it comprises the entire agreement between the parties. The meaning of this contract must be drawn from the terms of the instrument itself. It may not be changed by a mistaken interpretation or an error in calculation by either party.

The judgment of the District Court is reversed.